UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------

KORTRIGHT CAPITAL PARTNERS
LP, *et al.*,

     Plaintiffs,     16cv7619

   -against-      <u>OPINION & ORDER</u>

INVESTCORP INVESTMENT ADVISERS
LIMITED,

     Defendant.

------------------------------------------------------

WILLIAM H. PAULEY III, Senior United States District Judge:

   Kortright Capital Partners LP and its co-founders Matthew Taylor and Ty Popplewell (collectively, "Kortright") bring this diversity action against Investcorp Investment Advisers Limited ("Investcorp"). Investcorp moves for summary judgment on Kortright's remaining negligent misrepresentation claim. For the reasons that follow, Investcorp's motion for summary judgment is denied.

## BACKGROUND

   The latest chapter of this commercial dispute comes on the eve of trial following this Court's dismissal of the bulk of Kortright's claims and denial of leave to amend the complaint. See <u>Kortright Capital Partners LP v. Investcorp Inv. Advisers Ltd. ("Kortright I")</u>, 257 F. Supp. 3d 348 (S.D.N.Y. 2017); <u>Kortright Capital Partners LP v. Investcorp Inv. Advisers Ltd. ("Kortright II")</u>, 327 F. Supp. 3d 673 (S.D.N.Y. 2018). The underlying facts are set forth in those decisions. As relevant to this motion, Kortright and Investcorp entered into a Project Agreement in 2013 under which Investcorp agreed to invest its capital and its clients' capital in Kortright funds and market those funds to new investors in exchange for economic benefits that

Investcorp would receive as a seed investor. In 2015, Kortright began discussions with non-party Man Group about transitioning the existing Kortright funds to the Man Group umbrella or, in the alternative, having Taylor and Popplewell join Man Group as employees to manage funds allocated by Man Group while winding down the Kortright funds.

In the April 2016 discussions with Taylor that underlie Kortright's negligent misrepresentation claim, one of Investcorp's managing directors confirmed Investcorp's preference for moving the Kortright funds into Man Group and proposed that Investcorp leave its clients' capital invested with Kortright while withdrawing its own capital. Negotiations among Man Group, Kortright, and Investcorp culminated in a series of contracts executed on June 16, 2016. Kortright and Man Group entered into the Man Transaction Agreement, which contained certain conditions precedent to Man Group's obligation to consummate the transaction. (See Declaration of Christopher M. Joralemon in Support of Investcorp's Motion for Summary Judgment, ECF No. 107 ("Joralemon Decl."), Ex. D ("Man Transaction Agreement").) At the same time, Kortright and Investcorp agreed to terminate the Project Agreement and executed a Revenue Sharing Agreement that allowed Investcorp to share certain revenues from the Kortright funds as long as Investcorp maintained a certain level of capital investment. (See Joralemon Decl., Ex. E ("Termination Agreement"), Ex. R ("Revenue Sharing Agreement").)

On June 17, 2016, Kortright informed its investors of the Man Transaction and sought their consent to transfer their investments to Man Group. Investcorp initially returned consent forms providing its affirmative consent, only to inform Kortright one week later that it could not consent. Ultimately, the Man Transaction failed to close.

LEGAL STANDARD

Summary judgment is proper only when, viewing the evidence in the light most

favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ., 444 F.3d 158, 162 (2d Cir. 2006) (citing Anderson v. Liberty Lobby, 477 U.S. 242, 249 (1986)). The "mere existence of a scintilla of evidence" is insufficient to defeat summary judgment; rather, there must be enough "evidence on which the jury could reasonably find for the plaintiff." Liberty Lobby, 477 U.S. at 252.

DISCUSSION

A claim for negligent misrepresentation under New York law requires the plaintiff to demonstrate that (1) "the defendant had a duty, as a result of a special relationship, to give correct information"; (2) "the defendant made a false representation that he or she should have known was incorrect"; (3) "the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose"; (4) "the plaintiff intended to rely and act upon it"; and (5) "the plaintiff reasonably relied on it to his or her detriment." Anschutz Corp. v. Merrill Lynch & Co., 690 F.3d 98, 114 (2d Cir. 2012); accord Mandarin Trading Ltd. v. Wildenstein, 944 N.E.2d 1104, 1109 (N.Y. 2011).

Kortright's negligent misrepresentation claim arises from Investcorp's April 2016 statements indicating its preference for moving the Kortright funds to Man Group and its willingness to continue its clients' investment in Kortright while redeeming its own capital. The question presented on this summary judgment motion is whether Kortright reasonably relied on the April 2016 representations to its detriment, which encompasses both reasonable reliance and proximate causation. See Meyercord v. Curry, 832 N.Y.S.2d 29, 30-31 (N.Y. App. Div. 2007) (explaining that to show detrimental reliance, a plaintiff "must show both the defendant's

3

misrepresentation induced plaintiff to engage in the transaction in question (transaction causation) and that the misrepresentations directly caused the loss about which plaintiff complains (loss causation)" (citations and quotation marks omitted)).  Investcorp stakes its summary judgment motion on legal arguments that turn on the interpretation of the Man Transaction Agreement and the agreements between Kortright and Investcorp.  Accordingly, this Court cabins its analysis to whether Investcorp's arguments mandate dismissal as a matter of law for lack of reliance or causation without determining whether Kortright has established those elements or whether Investcorp is entitled to judgment as a matter of law for other reasons.

I.     Reasonable Reliance

In assessing the reasonableness of a plaintiff's alleged reliance, courts typically "consider the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them." Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc., 343 F.3d 189, 195 (2d Cir. 2003). Investcorp's argument principally rests on the following syllogism: (1) the Revenue Sharing Agreement does not incorporate Investcorp's alleged April 2016 representations that it would keep its clients' capital invested with Kortright; (2) the Revenue Sharing Agreement contains a merger clause that integrates the entire agreement between the parties; and (3) thus, Kortright may not reasonably rely on the April 2016 representations as a matter of law.  Stated differently, Investcorp asserts that the existence of written agreements that govern the contractual relationship between Kortright and Investcorp precludes reliance on any representation not explicitly reflected in those agreements.

As an initial matter, New York law generally provides that "the conflict between the provisions of [a] written contract and the oral representations negates the claim of reliance on

the latter." Bango v. Naughton, 584 N.Y.S.2d 942, 944 (N.Y. App. Div. 1992); see also Vestal v. Portillo, 72 N.Y.S.3d 610, 615 (N.Y. App. Div. 2018).  But this principle does not apply because Kortright does not seek to enforce Investcorp's extra-contractual April 2016 representations or otherwise use them to contradict or escape the terms of its written agreements with Investcorp.  Rather, the crux of Kortright's negligent misrepresentation claim is that those April 2016 representations induced it to engage in the transactions at issue in this action by entering into the June 2016 agreements.  Cf. Kortright I, 257 F. Supp. 3d at 356 (noting Kortright's concession that "the Termination and Revenue Sharing Agreements do not contain misstatements themselves," but that "the agreements reflect their reliance on Investcorp's April 2016 statements").

Moreover, absent a sufficiently specific disclaimer of the existence of or reliance on the April 2016 representations, Kortright is not precluded as a matter of law from claiming reliance on those representations.  See Mfrs. Hanover Tr. Co. v. Yanakas, 7 F.3d 310, 315 (2d Cir. 1993); accord Smith v. Fitzsimmons, 584 N.Y.S.2d 692, 695 (N.Y. App. Div. 1992).  Such a rule is grounded in the notion that "where a party specifically disclaims reliance upon a particular representation in a contract," it cannot reasonably "claim it was fraudulently induced to enter into the contract by the very representation it has disclaimed reliance upon."  Harsco Corp. v. Segui, 91 F.3d 337, 345 (2d Cir. 1996) (citing Danann Realty Corp. v. Harris, 157 N.E.2d 597 (N.Y. 1959)).  Here, none of the merger clauses in the operative agreements between the parties specifically disclaim the existence of or reliance on the April 2016 representations or any other representations.  (See Termination Agreement § 4.3; Revenue Sharing Agreement § 5.11.)  Thus, this Court holds that the Termination Agreement and Revenue Sharing Agreement (whatever its legal effect) do not render Kortright's reliance unreasonable as a matter

5

of law.  Accord, e.g., White v. Davidson, 55 N.Y.S.3d 223, 224-25 (N.Y. App. Div. 2017); Laduzinski v. Alvarez & Marsal Taxand LLC, 16 N.Y.S.3d 229, 233 (N.Y. App. Div. 2015).

The precedent Investcorp cites does not mandate a contrary conclusion.  The Second Circuit has stated in the securities fraud context that "[w]here the plaintiff is a sophisticated investor and an integrated agreement between the parties does not include the misrepresentation at issue, the plaintiff cannot establish reasonable reliance on that misrepresentation."  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 105 (2d Cir. 2007).  But nested within this sweeping pronouncement is a more nuanced application of New York law.  In particular, the line of cases referenced in ATSI Communications recognizes that to preclude reliance on extra-contractual representations, a fully integrated agreement must, for example, disavow the existence of or reliance upon particular representations or any representations not explicitly listed in the agreement.  See Emergent Capital Inv. Mgmt., 343 F.3d at 195; Harsco Corp. v. Segui, 91 F.3d 337, 345-48 (2d Cir. 1996).  In applying this principle, these cases are entirely consistent with the teachings of New York's intermediate appellate courts.  See Basis Yield Alpha Fund (Master) v. Goldman Sachs Grp., Inc., 980 N.Y.S.2d 21, 28 (N.Y. App. Div. 2014) ("The law is abundantly clear in this state that a [plaintiff's] disclaimer of reliance cannot preclude a claim of justifiable reliance on the [defendant's] misrepresentations or omissions unless (1) the disclaimer is made sufficiently specific to the particular type of fact misrepresented or undisclosed; and (2) the alleged misrepresentations or omissions did not concern facts peculiarly within the seller's knowledge" (citations omitted)).

Finally, because the merger clauses in the Termination Agreement and Revenue Sharing Agreement lack sufficient specificity to bar reliance on the April 2016 representations, this Court does not reach the issues of whether Kortright should have further investigated

Investcorp's willingness to leave its clients' capital invested or whether such information was peculiarly within Investcorp's knowledge. Cf., e.g., Basis Yield, 980 N.Y.S.2d at 29-30 (explaining that even a sufficiently specific disclaimer might not preclude reliance if the facts are peculiarly within the defendant's knowledge); accord Tahini Invs., Ltd. v. Bobrowsky, 470 N.Y.S.2d 431, 433 (N.Y. App. Div. 1984). And in any event, New York courts have stated that "a plaintiff is required to make 'additional inquiry' only if it 'has hints of [a misrepresentation's] falsity.'" Loreley Financing (Jersey) No. 3, Ltd. v. Morgan Stanley & Co., 47 N.Y.S.3d 252, 253 (N.Y. App. Div. 2017) (citing ACA Fin. Guar. Corp. v. Goldman, Sachs & Co., 32 N.E.3d 921, 923 (N.Y. 2015); see also Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V., 952 N.E.2d 995, 1002 (N.Y. 2011).

II.  Causation

Loss causation "is the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff." Lentell v. Merrill Lynch & Co., 396 F.3d 161, 172 (2d Cir. 2005) (citations and quotation marks omitted); accord Glidepath Holding B.V. v. Spherion Corp., 590 F. Supp. 2d 435, 457 (S.D.N.Y. 2007) (explaining that loss causation is "causation in the traditional 'proximate cause' sense—the allegedly unlawful conduct caused the economic harm" (citations omitted)). To establish loss causation, "a plaintiff must prove that the 'subject of the fraudulent statement or omission was the cause of the actual loss suffered.'" Basis PAC-Rim Opportunity Fund (Master) v. TCW Asset Mgmt Co., 48 N.Y.S.3d 654, 656 (N.Y. App. Div. 2017) (citation and quotation marks omitted) (emphasis in original). The "loss complained of [must be] a direct result of the defendant's wrongful actions and independent of other causes." Revak v. SEC Realty Corp., 18 F.3d 81, 90-91 (2d Cir. 1994). Stated differently, factors that may undermine a claim of causation include a lack of foreseeability, the intervention

7

of other independent causes, and the lack of "factual directness of the causal connection." First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 769 (2d Cir. 1994).

Here, Investcorp's April 2016 representations concern Investcorp's willingness to leave its clients' capital invested in Kortright. Thus, Kortright's causation theory largely hinges on whether Investcorp's redemption of client capital proximately caused the Man Transaction to fail. Investcorp contends that any misrepresentations that it would leave client capital invested could not have scuttled the Man Transaction based on the text of the Man Transaction Agreement. In particular, it asserts that a provision in that agreement unambiguously evinces Kortright and Man Group's understanding that the votes of any Kortright investor that redeems its investment prior to closing would not count toward the Kortright investor consent on which Man Group's obligation to close the transaction was conditioned. Although Kortright disputes Investcorp's interpretation of the Man Transaction Agreement, the proper interpretation of that agreement is not dispositive as to whether Investcorp's failure to leave its clients' capital invested bears a sufficient causal connection for purposes of Kortright's remaining tort claim. Cf. Channel Master Corp. v. Aluminum Ltd. Sales, Inc., 151 N.E.2d 833, 836 (N.Y. 1958) ("The present action is in tort, not contract, depending not on the agreement between the parties, but rather upon deliberate misrepresentation of fact, relied upon by the plaintiff to his detriment. In other words, the 'legal relations' binding the parties are created by the utterance of a falsehood 'within a fraudulent intent' and by reliance thereon and the cause of action is entirely 'independent of contractual relations between the parties.'" (internal citations omitted)).

In particular, Kortright proffers deposition testimony from Kortright and Man Group representatives indicating that the Man Transaction failed to close solely because Investcorp redeemed its clients' investment in Kortright and that the existence of the Man

8

Transaction itself was fundamentally premised on the continued investment of Investcorp's clients. (See Declaration of Jason M. Halper, ECF No. 122 ("Halper Decl."), Exs. 4, 7, 14.) Investcorp counters principally with the rule that "[e]vidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing." W.W.W. Assocs. v. Giancontieri, 566 N.E.2d 639, 642 (N.Y. 1990). However, courts have relaxed the application of the parol evidence rule where the action sounds in tort as opposed to an action pursuant to a contract or to enforce contractual obligations. See Oxon Italia S.p.A. v. Farmland Indus., Inc., 546 F. Supp. 681, 687 (S.D.N.Y. 1982) (citing Centronics Fin. Corp. v. El Conquistador Hotel Corp., 573 F.2d 779, 782 (2d Cir. 1978) ("[I]t is a generally accepted principle that the parol evidence rule is not to be strictly applied when such noncontractual claims are asserted.").

Thus, while the parties also spar over whether Investcorp as a non-party may invoke the parol evidence rule to bar consideration of evidence extrinsic to the Man Transaction Agreement between Kortright and Man Group, this Court need not reach that question on this motion. To the extent that Kortright does not seek to offer the deposition testimony to vary or contradict the terms of the Man Transaction Agreement or otherwise enforce the terms of that agreement,[1] such evidence may be considered for purposes of determining whether the redemption of Investcorp's clients' capital proximately caused plaintiffs' damages for purposes of Kortright's tort claim. Cf. Phalen v. Vineyard L.V., Inc., 683 N.Y.S.2d 615, 616 (N.Y. App. Div. 1998) (concluding that certain testimony was permissible parol evidence where it "merely

---

[1] On this score, Investcorp relies on a raft of cases that affirm a trial court's exclusion of extrinsic evidence to determine the meaning or vary the terms of an unambiguous contract. However, these authorities are inapposite because they concern claims brought pursuant to or to enforce a contract. See, e.g., Omni Quartz, Ltd. v. CVS Corp., 287 F.3d 61, 62 (2d Cir. 2002); Int'l Klafter Co. v. Cont'l Cas. Co., 869 F.2d 96, 97 (2d Cir. 1989); S. Rd. Assocs., LLC v. Int'l Bus. Machs. Corp., 826 N.E.2d 806, 837 & n.2 (N.Y. 2005); Namad v. Salomon Inc., 543 N.E.2d 722, 752-53 (N.Y. 1989).

9

explained the purpose of [an insurance policy] and the intent of the principals in purchasing the policy in relation to two collateral agreements").

Ultimately, "summary judgment is proper only when, if all permissible inferences and credibility questions are resolved in favor of the party against whom judgment is sought, 'there can be but one reasonable conclusion as to the verdict,' i.e., 'it is quite clear what the truth is.'" Rogoz v. City of Hartford, 796 F.3d 236, 246 (2d Cir. 2015) (internal citations omitted). And in particular, "[p]roximate cause is almost invariably a factual issue . . . for the trier of fact to determine." Haibi v. 790 Riverside Drive Owners, Inc., 64 N.Y.S.3d 22, 24 (N.Y. App. Div. 2017); cf. Altamirano Bermejo v. Khaydarov, 63 N.Y.S.3d 107, 109 (N.Y. App. Div. 2017) (explaining that proximate cause "may be decided as a matter of law where only one conclusion may be drawn from the established facts" (citations omitted)). The record, including the testimony by Kortright and Man Group representatives, bespeaks some ambiguity in the role that Investcorp's failure to keep client capital invested played in causing certain closing conditions to fail. But the directness of the causal connection between alleged misrepresentation and harm—and the credibility and reliability of Kortright's deposition testimony—are matters to resolve at trial. See Reyes v. Lincoln Auto. Fin. Servs., 861 F.3d 51, 55 (2d Cir. 2017); Fincher v. Depository Tr. & Clearing Corp., 604 F.3d 712, 725 (2d Cir. 2010).

## CONCLUSION

For the foregoing reasons, Investcorp's motion for summary judgment is denied. The Clerk of Court is directed to terminate the motion pending at ECF No. 101.

Dated: December 4, 2018
    New York, New York

SO ORDERED:

*[signature]*

WILLIAM H. PAULEY III
U.S.D.J.